**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**THURMAN GOODMAN, JR.,**

    **Plaintiff,**

                      **Case No.**

v.

**FLORIDA POP, LLC d/b/a POPEYES**
**LOUISIANA KITCHEN,**                      **JURY TRIAL DEMANDED**

    **Defendant.**
_____/

## COMPLAINT

Plaintiff Thurman Goodman, Jr. ("Goodman" or "Plaintiff"), by and through undersigned counsel, brings this Complaint against Defendant Florida Pop, LLC d/b/a Popeyes Louisiana Kitchen ("the Company" or "Defendant"), and states as follows:

## JURISDICTION

1. Plaintiff Goodman is an individual 18 years of age or older and is thus *sui juris*.

2. Goodman currently resides in Hillsborough County, Florida, and did at all times relevant to the allegations herein reside in Hillsborough County, Florida.

3. Defendant Company is registered to do business in Florida as a Foreign Limited Liability Company with its principal place of business at 3318 Forest Lane, Suite 200, Dallas, Texas 75234.

4. Company owns and operates the Popeye's Louisiana Kitchen located at 10551 Big Bend Road in Riverview, Florida, which is located in Hillsborough County.

5. The events or transactions out of which this claim arose occurred in Hillsborough County, Florida.

6. This is an action for damages which exceed $75,000.00, exclusive of attorneys' fees, costs, and interest.

7. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as Goodman resides in Florida, the Company is based in Texas, and Goodman's damages are well in excess of $75,000.00, exclusive of attorneys' fees, costs, and interest.

8. Venue is proper in the Tampa Division pursuant to 28 U.S.C. § 1391(b)(2) and Middle District of Florida Local Rule 1.02(b) because the actions in this case occurred in and accrued in Hillsborough County.

## GENERAL ALLEGATIONS

9. On or about March 6, 2016, Goodman reported that he had observed an employee drinking an alcoholic beverage while working.

10. Goodman made the report to the Company's Assistant Manager, Kayla Maldonado ("Maldonado") via text message.

11. Upon information and belief, Maldonado understood that Goodman's report was with respect to Jason Lismore ("Lismore"), which it was.

12. Furthermore, upon information and belief, Maldonado informed Lismore that Goodman had reported Lismore for his conduct.

13. On or about March 8, 2016, Goodman met with General Manager Bernard Robertson ("Robertson"), Maldonado, and Assistant Manager Aaliyah Smith ("Smith") (Robertson, Maldonado, and Smith shall collectively be referred to as the "Management Team").

14. During the March 8, 2016 meeting, Goodman inquired as to why the Management Team was permitting Lismore to drink on the job.

15. The Management Team informed Goodman that they had already reported the issue to "corporate."

16. On March 14, 2016, Goodman arrived for his shift and observed that Lismore had a cup filled with liquor at Lismore's assigned station.

17. Goodman took the cup to Maldonado, who responded that she "knew who it belonged to," meaning Lismore.

18. To Goodman's knowledge, no disciplinary action was taken against Lismore despite the evidence of his continued drinking of alcoholic beverages while on-the-job.

19. On March 31, 2016, Goodman arrived for his shift (the night shift) and observed that the day shift workers, including Lismore, had not left the kitchen in good order for the night shift workers.

20. Goodman reported the problem to Robertson.

21. Lismore approached the area where Goodman and Robertson were talking, at which point, Robertson informed Lismore that he would have to do a better job setting up for the night crew.

22. Lismore then brusquely walked by Goodman and mumbled something under his breath.

23. It appeared that Lismore was attempting to instigate a fight with Goodman.

24. Upon observing Lismore's conduct, Assistant Manager Travis Green ("Green") intervened and escorted Lismore outside.

25. Robertson, Green, and Lismore went outside.

26. Upon information and belief, Lismore and Robertson were "drinking buddies."

27. Green came back into the store and told Goodman that although Robertson was originally opposed to suspending Lismore for his conduct, Green had pushed for the suspension and Robertson had finally agreed to suspend Lismore.

28. Robertson then said something to Goodman to the effect of "although he had protected Goodman from Lismore in the past, he didn't know if he could anymore."

29. Later, on the same night (March 31, 2016), Goodman went outside at the close of his shift to take out the garbage.

30. Goodman went to the 7-Eleven next door to the Popeye's to purchase a few items.

31. While Goodman was at the register checking out, Lismore, Green, and another individual approached him rapidly.

32. Lismore asked Goodman "why he snitched on him?"

33. Thereafter, all three men—including Green and Lismore—began physically attacking Goodman.

34. A 7-Eleven employee called 911.

35. Goodman's co-workers frequently went to the 7-Eleven while on-the-clock to pick up snacks, drinks, or cigarettes during their shifts.

36. Goodman believes that Green was on-the-clock when Green and Lismore attacked him.

37. Further, Goodman believes he may have also been on-the-clock when the attack occurred, because he does not know whether or not Green made good on his promise to clock Goodman out that night.

38. On April 1, 2016, Goodman made direct contact with "corporate" to report the March 31, 2016 attack.

39. Despite Goodman's report, upon information and belief, Lismore remained employed by the Company until April 6, 2016.

40. Lismore pleaded out to First Degree Misdemeanor Battery for his March 31, 2016 attack on Goodman.

41. Goodman felt extraordinarily unsafe at the worksite due to Lismore's continued employment.

42. Goodman believed that Lismore's continued employment was an effort by the Defendant to intimidate him, coerce him, and otherwise frighten him into not pursuing his legal rights.

43. The continued employment of Lismore was so threatening to Goodman, that he felt he had no other option but to cease working for the Defendant, making his separation a constructive discharge.

## COUNT I (FLORIDA WORKERS' COMPENSATION RETALIATION)

44. Goodman reaffirms and realleges paragraphs 1-43, above.

45. Goodman reported the physical injuries he suffered on March 31, 2016 to the Defendant.

46. The Defendant actually knew or should have known that the injuries Goodman suffered arose out of the course and scope of Goodman's employment, such that a workers' compensation claim could or should have been made.

47. To wit: a workers' compensation claim ultimately was filed with respect to Goodman's injuries.

48. Nevertheless, the Defendant intimidated, coerced, and constructively discharged Goodman by reason of his valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law.

49. The Defendant's retaliation against Goodman has caused him financial, emotional, and physical harm, that harm continues to this day, and is likely to continue to the indefinite future.

50. The Defendant is a large corporation with stores in multiple states.

51. The Defendant permitted one of its assistant managers and one of Goodman's co-workers to violently attack him as a direct and proximate result of on-the-job events.

52. The Defendant then acted recklessly and maliciously by exposing Goodman to Lismore and Green after it knew, at minimum, that Lismore had significantly harmed Goodman.

53. The Defendant's callous behavior toward Goodman after the attack is indicative of its blatant disregard for his injuries and his legal right to pursue workers' compensation benefits to remedy them.

54. The Company's unlawful conduct has required Goodman to retain undersigned counsel to protect his rights, and he is obligated to remit fees for the same.

WHEREFORE, Goodman demands that the Court enter judgment against the Company for the following:

    a. Compensatory damages, including, but not limited to compensation for physical injury and past, present, and future mental anguish;

    b. Back pay, including back wages and benefits through the date of trial;

    c. Goodman's reasonable attorneys' fees and costs;

    d. Punitive damages;

    e. Front pay;

  f. Nominal damages;

  g. Interest; and,

  h. Any other relief the Court deems just and proper.

## COUNT II (FLORIDA PRIVATE WHISTLE-BLOWER'S ACT RETALIATION)

55. Goodman reaffirms and realleges paragraphs 1-43, above.

56. The Defendant did at all relevant times employ ten or more individuals.

57. Therefore, the Defendant was an "employer" within the meaning of the Florida Private Whistle-blower's Act ("the Act").  Fla. Stat. § 448.101, *et seq*.

58. At all relevant times, Goodman was an "employee" of the Defendant within the meaning of the Act.

59. Goodman reported alcohol use by his co-workers on-the-job, which is a violation of the Occupational Safety and Health Act's general duties clause (29 U.S.C. § 654(a)(1)), because the alcohol consumption while hot grease was being handled was not safe.

60. Goodman's management retaliated against him by facilitating and participating in the attack on Goodman by Lismore and Green.

61. Furthermore, the Defendant continued to expose Goodman to the violent propensities of Lismore and Green, which caused Goodman's constructive discharge.

62. Thus, the Defendant violated the Act.

63. The Defendant's retaliation against Goodman has caused him financial, emotional, and physical harm, that harm continues to this day, and is likely to continue to the indefinite future.

64. The Company's unlawful conduct has required Goodman to retain undersigned counsel to protect his rights, and he is obligated to remit fees for the same.

WHEREFORE, Goodman demands that the Court enter judgment against the Company for the following:

a. Compensatory damages, including, but not limited to compensation for physical injury and past, present, and future mental anguish;

b. Back pay, including back wages and benefits through the date of trial;

c. Goodman's reasonable attorneys' fees and costs;

d. Front pay;

e. Nominal damages;

f. Interest; and,

g. Any other relief the Court deems just and proper.

## JURY TRIAL DEMAND

The Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this 12th day of February, 2020.

/s/ Shaina Thorpe
**SHAINA THORPE**
Florida Bar No. 0055464
Primary: shaina@thorpelaw.net
Secondary: angel@thorpelaw.net

**THORPELAW, P.A.**
1228 East 7th Ave., Ste. 200
Tampa, Florida 33605
Telephone: (813) 400-0229
Fax: (813) 944-5223

*Counsel for Plaintiff Thurman Goodman, Jr.*